IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In re:<br><br>hhgregg, Inc., *et al.*,[1]<br><br>　　　　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 17-01302-JJG-11<br><br>(Jointly Administered) |
| Official Committee of Unsecured Creditors of Gregg Appliances, Inc.,<br>　　　　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>Reliance Standard Life Insurance Company,<br>　　　　　　　　　　　　　Defendant. | Adv. No. **Refer to Summons** |

**COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§ 547, 548, 549 AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502**

　　　　The Official Committee of Unsecured Creditors of Gregg Appliances, Inc. (the "Committee" or "Plaintiff"), by and through its undersigned counsel, files this complaint (the "Complaint") to avoid and recover transfers against Reliance Standard Life Insurance Company (the "Defendant") and to disallow any claims held by Defendant. In support of this Complaint, Plaintiff alleges upon information and belief that:

**NATURE OF THE CASE**

　　　　1.　　Plaintiff seeks to avoid and recover from Defendant, or from any other person or entity for whose benefit the transfers were made, all preferential transfers of property that occurred during the ninety (90) day period prior to the commencement of the bankruptcy proceedings of

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: hhgregg, Inc. (0538); Gregg Appliances, Inc. (9508); and HHG Distributing LLC (5875). The location of the Debtors' corporate headquarters is 4151 East 96th Street, Indianapolis, Indiana 46240.

1

hhgregg, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors")[2] pursuant to sections 547 and 550 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Subject to proof, Plaintiff also seeks to avoid and recover from Defendant or any other person or entity for whose benefit transfers were made pursuant to sections 548 and 550 of the Bankruptcy Code any transfers that may have been fraudulent conveyances. Plaintiff also seeks to avoid and recover from Defendant or any other person or entity for whose benefit transfers were made pursuant to sections 549 and 550 of the Bankruptcy Code any transfers that were made after the Debtors commenced the bankruptcy case and which transfers were not authorized by the Bankruptcy Code or this Court.

2. In addition, Plaintiff seeks to disallow, pursuant to sections 502(d) and (j) of the Bankruptcy Code, any claim that Defendant has filed or asserted against the Debtors or that has been scheduled for Defendant. Plaintiff does not waive but hereby reserves all of its rights and the rights of the other Debtors to object to any such claim for any reason, including, but not limited to, any reason set forth in sections 502(a) through (j) of the Bankruptcy Code.

## JURISDICTION AND VENUE

3. This court has subject matter jurisdiction over this adversary proceeding, which arises under title 11, arises in, and relates to cases under title 11, in the United States Bankruptcy Court for the Southern District of Indiana (the "Court"), captioned *In re hhgregg, Inc., et al.,* Case No. 17-01302-JJG-11, pursuant to 28 U.S.C. §§ 157 and 1334(b).

4. The statutory and legal predicates for the relief sought herein are sections 502, 547, 548, 549 and 550 of the Bankruptcy Code and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[2] The "Debtors" are all entities listed in footnote 1.

5.  This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter final orders for matters contained herein.

6.  Venue is proper in the Southern District of Indiana pursuant to 28 U.S.C. § 1409.

7.  Pursuant to Local Bankruptcy Rule B-7008-1, Plaintiff states that it does consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## PROCEDURAL BACKGROUND

8.  On March 6, 2017 (the "Petition Date") the Debtors each commenced a case by filing a voluntary petition for relief in this Court under chapter 11 of the Bankruptcy Code and a trustee has not been appointed.

9.  On March 10, 2017, the Office of the United States Trustee for the Southern District of Indiana (the "U.S. Trustee") appointed the Committee. [Dkt. No. 118].[3]

10. On March 13, 2017, the Court entered an order authorizing the joint administration of the chapter 11 cases for procedural purposes only.  [Dkt. Nos. 138, 139].

11. On May 2, 2017, the Court entered the *Final Order (I) Authorizing Debtors in Possession to Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 362, 363, and 364, (II) Granting Liens and Superpriority Claims to Post-Petition Lenders Pursuant to 11 U.S.C. §§ 364 and 507; and (III) Authorizing the Use of Cash Collateral and Providing Adequate Protection to Prepetition Secured Parties and Modifying the Automatic Stay Pursuant To 11 U.S.C. §§ 361,*

---

[3] All docket items referenced are from Case No. 17-01302-JJG-11, under which the Debtors' bankruptcy cases are jointly administered.

3

*362, 363, and 364* (the "Final DIP Order")[4] which, among other things, granted the Committee exclusive standing to pursue causes of action under Chapter 5 of the Bankruptcy Code.

## THE PARTIES

12. Pursuant to the Final DIP Order, the Committee has the exclusive right, authority, standing and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, monetize, assign, transfer, release, withdraw, or litigate to judgment certain causes of action under chapter 5 of the Bankruptcy Code, including the instant avoidance action, in consultation with the DIP Agent and FILO Agent.[5]

13. Upon information and belief, Defendant was, at all relevant times, a vendor or creditor that provided insurance products and services to or for Plaintiff. Upon further information and belief, at all relevant times, Defendant's principal place of business is located at 2001 Market Street, Suite 1500, Philadelphia, Pennsylvania 19103. Plaintiff is informed and believes and on that basis alleges that Defendant is a corporation residing in and subject to the laws of the State of Illinois.

## FACTUAL BACKGROUND

14. As more fully discussed in the *Declaration of Kevin J. Kovacs in Support of Chapter 11 Petitions and Requests for First Day Relief*,[6] the Debtors were a multi-regional retailer that provided an extensive selection of premium appliances, consumer electronics, home products, and computer tablets in both 220 brick-and-mortar stores in 19 states, and nationwide via hhgregg.com. In addition to selling appliances, consumer electronics, and home products, the

---

[4] Dkt. No. 923.

[5] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Final DIP Order.
[6] Dkt. No. 19.

Debtors also sold third-party service plans, as well as third-party in-home service, repair, delivery, and maintenance services. Debtor Gregg Appliances, Inc. ("Gregg Appliances") is wholly-owned by hhgregg, Inc., while Debtor HHG Distributing LLC is in turn wholly-owned by Gregg Appliances.

15. Prior to the Petition Date, as a multi-regional retailer of home appliances and consumer electronics, the Debtors maintained business relationships with various business entities, through which the Debtors regularly purchased, sold, received, and/or delivered goods and services.

16. As a multi-regional retailer of home appliances and consumer electronics, the Debtors regularly purchased goods from various entities including vendors, creditors, suppliers and distributors. The Debtors also regularly paid for services used to facilitate its business.

17. The Debtors' financial difficulties that led to the decision to file the Bankruptcy Case are attributable to a combination of factors, all of which placed significant stress on the Debtors' liquidity position in the months leading up to the Petition Date. The appliance and consumer electronic industries are highly competitive and concentrated among a group of major retailers. The home furnishing industry, in contrast, is highly fragmented, with sales coming from various types of retailers. The Debtors' stores were competing against consumer electronics retailers, home furnishing retailers, specialty home office retailers, mass merchants, home improvement stores, internet-based retailers, independent dealers, and wholesale clubs, among others. A number of retailers, including some operating in the Debtors' space, had already been forced to seek bankruptcy protection or liquidate, based on the same issues facing the Debtors: declining retail traffic, fast-changing trends, expensive commercial leases, and the proliferation of online shopping. Additionally, following a disappointing holiday season, the Debtors continued to

experience tightening liquidity, exacerbated by the requirement of the Debtors' store credit card issuer that they post letters of credit.

18. As of the Petition Date, the Debtors utilized and maintained a cash management system (the "Cash Management System") for the collection, concentration, management, and disbursement of funds in the Debtors' business. As of the Petition Date, the Cash Management System consisted of several bank accounts, including: zero-balance accounts, concentration accounts, disbursement accounts, and operating accounts (collectively, the "Bank Accounts"), which were maintained at JP Morgan Chase and certain other banks.[7]

19. Among these bank accounts, disbursement to vendors and for payroll were made from the following accounts, all of which were held at JP Morgan Chase by Gregg Appliances: an account ending 9174; an account ending 9802; an account ending 9729; and an account ending 8341 (collectively, the "Disbursement Accounts").

20. Gregg Appliances drew upon the Disbursement Accounts to pay for its operational costs, including payment to its vendors, suppliers, distributors, and other creditors, including Defendant.

21. During the ninety (90) days before the Petition Date, that is between December 6, 2016, and March 6, 2017 (the "Preference Period"), Gregg Appliances continued to operate its business affairs, including the transfer of property, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits or otherwise to various entities.

22. Upon information and belief, during the course of their relationship, the Defendant and Gregg Appliances entered into agreements, which are evidenced by invoices, communications

---

[7] *See Debtors' First Day Motion for an Order (I) Approving Continued Use of Cash Management System, (II) Authorizing Use of Prepetition Bank Accounts, and (III) Waiving the Requirements of 11 U.S.C. § 345(b) on an Interim Basis* (the "Cash Management Motion") [Dkt. No. 12].

6

and other documents (collectively, the "Agreements"). The Agreements concerned and related to the goods and/or services provided by Defendant to Gregg Appliances as described in the "Parties" section of this Complaint. The details of each of the transfers under the Agreements made during the Preference Period are set forth on the Statement of Account, which is attached hereto and incorporated by reference as Exhibit A. Such details include "Invoice Number," "Invoice Date," and "Invoice Amount."

23. Gregg Appliances and Defendant conducted business with one another through and including the Petition Date pursuant to the Agreements.

24. As identified in the Agreements identified on Exhibit A, Gregg Appliances purchased goods and/or services from Defendant.

25. Plaintiff has completed an analysis of all readily available information of the Debtors and is seeking to avoid all of the transfers of an interest of Gregg Appliances' property made by Gregg Appliances to Defendant within the Preference Period.

26. Gregg Appliances made transfer(s) of an interest of Gregg Appliances' property to or for the benefit of Defendant during the Preference Period through payments aggregating to an amount not less than $349,163.23 (the "Transfer" or "Transfers"). The details of each Transfer are set forth on Exhibit A attached hereto and incorporated by reference. Such details include "Check Number," "Check Amount," "Check Clear Date," and "Debtor Transferor(s)." Additionally, to the extent there are any transfers that cleared the Disbursement Accounts after the Petition Date (the "Post-Petition Transfers"), such amounts are listed on Exhibit A and incorporated herein by reference.

27. During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference Period. It is Plaintiff's

7

intention to avoid and recover all transfers made by the Debtors of an interest of the Debtors in property and to or for the benefit of Defendant or any other transferee. Plaintiff reserves its right to amend this original Complaint to include: (i) further information regarding the Transfer(s), (ii) additional transfers, (iii) modifications of and/or revision to Defendant's name, (iv) additional defendants, and/or (v) additional causes of action, if applicable (collectively, the "Amendments"), that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

## CLAIMS FOR RELIEF

### COUNT I
**(Avoidance of Preference Period Transfers – 11 U.S.C. § 547)**

28.     Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

29.     As more particularly described on Exhibit A attached hereto and incorporated herein, during the Preference Period, Gregg Appliances made Transfers to or for the benefit of Defendant in an aggregate amount not less than $349,163.23.

30.     Each Transfer was made from one or more of the Disbursement Accounts described *supra,* and constituted transfers of an interest in property of Gregg Appliances.

31.     Defendant was a creditor of Gregg Appliances at the time of each Transfer by virtue of supplying goods and/or services identified in this Complaint and in the Agreements to Gregg Appliances as more fully set forth on Exhibit A hereto, for which Gregg Appliances was obligated to pay following delivery in accordance with the Agreements. See Exhibit A.

32.     Each Transfer was to or for the benefit of a creditor within the meaning of 11 U.S.C. § 547(b)(1) because each Transfer either reduced or fully satisfied a debt or debts then owed by Gregg Appliances to Defendant. See Exhibit A.

33. Each Transfer was made for, or on account of, an antecedent debt or debts owed by Gregg Appliances to Defendant before such Transfers were made, as asserted by Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by Gregg Appliances. See Exhibit A.

34. Even though Plaintiff is entitled to the presumption of insolvency for each Transfer made during the Preference Period pursuant to 11 U.S.C. § 547(f), each Transfer was made while Gregg Appliances was insolvent. As described in the First Day Declaration, during the entire Preference Period the Debtors were experiencing extreme financial difficulty. The last public filing of financial results by the Debtors before the Petition Date, which was a 10-Q report, shows a net loss of $83,873,000 on net sales of $1,330,863,000 for the nine-month period ending December 31, 2016.

35. Each Transfer was made during the Preference Period, as set forth on Exhibit A.

36. As a result of each Transfer, Defendant received more than Defendant would have received if: (i) Gregg Appliances' case was under chapter 7 of the Bankruptcy Code; (ii) the Transfers had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by Gregg Appliances' schedules filed in the underlying bankruptcy case as well as the proofs of claim that have been received to date, Gregg Appliances' liabilities exceeds its assets to the point that unsecured creditors will not receive a full payout of their claims from Gregg Appliances' bankruptcy estate.

37. In accordance with the foregoing, each Transfer is avoidable pursuant to 11 U.S.C. § 547(b).

## COUNT II
### (Avoidance of Fraudulent Conveyances – 11 U.S.C. § 548(a)(1)(B))

38. Plaintiff hereby incorporates all previous allegations as though fully set forth herein.

39. To the extent one or more of the Transfers identified on <u>Exhibit A</u> was not made on account of an antecedent debt, or was a prepayment for goods and/or services subsequently received, and/or was payment on a debt incurred by another Debtor but paid by Gregg Appliances, Plaintiff pleads in the alternative that Gregg Appliances did not receive reasonably equivalent value in exchange for such transfer(s) (the "<u>Potentially Fraudulent Transfers</u>"); and

    A.    Gregg Appliances was insolvent as of the date of the Transfer(s), or became insolvent as a result of the Transfer(s); or

    B.    Gregg Appliances was engaged, or about to engage, in business or a transaction for which any property remaining with Gregg Appliances or for whose benefit the Transfer(s) was made was an unreasonably small capital; or

    C.    Gregg Appliances intended to incur, or believed it would incur, debts beyond its ability to pay upon maturity.

40. Based upon the foregoing, the Potentially Fraudulent Transfers are avoidable pursuant to 11 U.S.C. § 548(a)(1)(B).

## COUNT III
### (Avoidance of Unauthorized Post-Petition Transfers – 11 U.S.C. § 549)

Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

41. To the extent any of the Transfer(s) identified on <u>Exhibit A</u> cleared the Disbursement Account(s) after the Petition Date including, upon information and belief, any Post-

10

Petition Transfers currently listed on <u>Exhibit A</u>, as applicable, and such Transfers and were not authorized by the Court or the Bankruptcy Code, Plaintiff pleads in the alternative that such Post-Petition Transfers are avoidable pursuant to 11 U.S.C. § 549.

## COUNT IV
### (Recovery of Avoided Transfers – 11 U.S.C. § 550)

42. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Count.

43. Plaintiff is entitled to avoid the Transfer(s) pursuant to 11 U.S.C. § 547(b), any Potentially Fraudulent Transfers pursuant to 11 U.S.C. § 548, and/or any Post-Petition Transfers pursuant to 11 U.S.C. § 549 (collectively, the "<u>Avoidable Transfers</u>").

44. Defendant was the initial transferee of the Avoidable Transfer(s) or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoidable Transfer(s) were made.

45. Pursuant to 11 U.S.C.§ 550(a), Plaintiff is entitled to recover from Defendant the Avoidable Transfer(s), plus interest thereon to the date of payment and the costs of this action.

## COUNT V
### (Disallowance of all Claims – 11 U.S.C. § 502(d) and (j))

46. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

47. Defendant is a transferee of transfers avoidable under sections 547, 548, and/or 549 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

48. Defendant has not paid the amount of the Avoidable Transfer(s), or turned over such property, for which Defendant is liable under 11 U.S.C. § 550.

49. Pursuant to 11 U.S.C. § 502(d), any and all Claims of Defendant and/or its assignee, against the Debtors' chapter 11 estates or Plaintiff must be disallowed until such time as Defendant

pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s), plus interest thereon and costs.

50. Pursuant to 11 U.S.C. § 502(j), any and all Claims of Defendant, and/or its assignee, against the Debtors' chapter 11 estates or Plaintiff previously allowed by the Debtors or by Plaintiff, must be reconsidered and disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court grant it the following relief against Defendant:

A. On Plaintiff's First, Second, Third, and Fourth Claims for Relief, judgment in favor of Plaintiff and against Defendant, avoiding all of the Avoidable Transfers and directing Defendant to return to Plaintiff the amount of the Avoidable Transfers, pursuant to 11 U.S.C. §§ 547(b), 548, and/or 549 and 550(a), plus interest at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action including, without limitation, attorneys' fees;

B. On Plaintiff's Fifth Claim for Relief, judgment in favor of Plaintiff and against Defendant disallowing any claims held or filed by Defendant against the Plaintiff until Defendant returns the Avoidable Transfers to Plaintiff pursuant to 11 U.S.C. § 502(d) and (j); and

C. Granting Plaintiff such other and further relief as this Court may deem just and proper.

Dated: November 21, 2017	Respectfully submitted,

ASK LLP

*/s/ Joseph L. Seinfeld, Jr.*
Joseph L. Steinfeld, Jr., Esq., MN SBN 0266292
Gary Underdahl, Esq., MN SBN 0301693
2600 Eagan Woods Drive, Suite 400
St. Paul, MN  55121
Telephone: (651) 289-3850
Fax: (651) 406-9676
Email: jsteinfeld@askllp.com

*-and-*

Edward E. Neiger, Esq.
151 West 46th Street, 4th Fl.
New York, NY  10036
Telephone: (212) 267-7342
Fax: (212) 918-3427

*Counsel to the Official Committee of Unsecured Creditors of Gregg Appliances, Inc.*